UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MATTHEW MAGGIO, <br><br> Plaintiff <br><br> v. <br><br> WISCONSIN AVENUE PSYCHIATRIC CENTER, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil No. 1:13-CV-01255 (RCL) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OPINION**

Before the Court is the defendant's motion to dismiss, or alternatively, the defendant's motion for summary judgment on plaintiff's Matthew Maggio's compliant brought pursuant to the D.C. Human Rights Act (DCHRA), Title VII 42 U.S.C. § 2000, and the Equal Pay Act (EPA), 29 U.S.C. § 206(d). Maggio filed a complaint alleging sex discrimination, retaliation, and a claim under the Equal Pay Act. For the reasons stated below, defendant's motion to dismiss will be GRANTED.

I. BACKGROUND

The relevant facts are as follows: Matthew Maggio, a male, worked at the Psychiatric Institute of Washington ("PIW") from July 20, 2009 until December 23, 2011 when PIW terminated his employment for allegedly lacking a valid license. PIW hired Maggio as a Counselor making $38,000 per annum. In October or November 2009, PIW promoted Maggio to the position of Teacher and increased his salary to $42,000 per annum. In January 2010, PIW promoted Maggio to the role of School Director, bringing up his salary to $52,000 per annum.

1

In order to be certified as a Teacher, a candidate must apply for a substitute teaching license from the District of Columbia Office of the State Superintendent of Education ("OSSE"). At the time of Maggio's promotion to Teacher, Maggio did not have his teaching license. Maggio applied for a teaching license, and claims to have had complications with his application in early September 2009. Maggio alleges that he visited OSSE in November or December 2009 at which point he obtained his teaching license, which OSSE backdated to September 21, 2009; it was valid for two years. Additionally, as a requirement for direct patient contact, Directors must obtain a Critical Crisis Management ("CCM") license. Maggio obtained this license during his orientation on July 20, 2009 from PIW, and renewed it yearly.

On August 24, 2011, Maggio alleges that he engaged in protected activity by filing a complaint with PIW Human Resources, citing a hostile work environment due to Carol Dejunes, Vice President and Chief Operating Officer of PIW, and Maggio's primary supervisor.

On December 22 and 23, 2011, PIW was audited by the Joint Commission on Accreditation of Healthcare Organizations ("JCAHO"). During the audit, JCAHO discovered that some PIW Directors were not current on their licenses. Maggio was terminated on December 22, 2011 by PIW, allegedly due to a lack of documentation provided to the PIW Human Resources Department by Maggio proving that he started the application process to renew his license. Maggio alleges that he provided a letter and information to Randy Keller, Director of PIW Human Resources, in August and September 2011 stating that he had applied for his teaching license renewal with OSSE and that there was a delay in the renewal due to Maggio not submitting his fingerprints with his initial renewal application.

Maggio first filed a charge of discrimination with the D.C. Office of Human Rights ("DCOHR") on May 11, 2012 and cross filed a copy of the charge with the Equal Employment

Opportunity Commission ("EEOC"). Several months later on November 26, 2012 the EEOC mailed a Notice to Sue by regular U.S. mail to Maggio's permanent address on file: 3032 Rodman Street N.W., Apartment 35, Washington, D.C. 20008. Unbeknownst to the EEOC, Maggio claims he vacated that residence on April 1, 2012, and then resided at 809 Windemere Court, Conway, South Carolina from April 2, 2012 to the present. Maggio stated in his Amended Complaint that he moved to South Carolina to be with his family and his mother, as she was ill. As a result, Maggio claims that he never received the Notice to Sue sent by U.S. regular mail on November 26, 2012. At this time, a copy of the Notice to Sue was not sent to Maggio's counsel.

On June 4, 2013, Maggio's counsel telephoned the EEOC to request a Notice to Sue. The EECO instructed Maggio's counsel to send a written request via facsimile, which counsel satisfied that same day. On June 14, 2013, Maggio's counsel again telephoned the EEOC to check on the status of the Notice to Sue. David Gonzalez, the State and Local Coordinator of the Washington, DC EEOC field office, sent counsel an email on June 17, 2013 requesting a formal letter of representation. Upon receipt of the letter, Gonzalez emailed Maggio's counsel the Notice to Sue on June 17, 2013. Gonzalez informed counsel that the EEOC did not have Maggio's current address on file as they were unaware of Maggio's move, they were unaware of his representation by counsel, and he "regret[ed] any inconvenience." Exhibit 1, Pl. Opp. to Def. Motion, Doc. [5].

Five days later on June 21, 2013, Maggio filed his complaint with the D.C. Superior Court. Maggio's initial Complaint sought relief under the District of Columbia Human Rights Act ("DCHRA") for alleged sex discrimination, wage discrimination based on sex, and retaliation arising from Maggio's employment and termination by defendant. Maggio filed an

Amended Complaint on August 5, 2013, which omits any claim under the DCHRA and instead seeks relief under the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*, ("Title VII") for alleged sex discrimination and retaliation, and seeks relief under the Equal Pay Act, 29 U.S.C. § 216(b). Maggio had to refile the Amended Complaint on August 8, 2013 to correct the name of the corporate defendant. In response to the initial Complaint, defendant, PIW, filed its Motion to Dismiss, or in the Alternative, Motion for Summary Judgment based on Maggio's failure to timely file his claims.

## II. DISCUSSION

### A. Motion to Dismiss

#### 1. Counts I and III are Time-Barred and Untimely

"Title VII requires that a person complaining of a violation file an administrative charge with the EEOC and allow the agency time to act on the charge." *Park v. Howard University*, 71 F.3d 904, 907 (D.C. Cir. 1995). Once the EEOC notifies the complainant of its decision to dismiss the charge or its inability to bring a civil action within the requisite 90-day time period, then the complainant can bring a civil action himself. *Id.*; 42 U.S.C. § 2000e-5(f)(1). The statutory 90-day window for the commencement of an employment discrimination suit following the receipt of a notice-to-sue from the EEOC is strictly construed and is a precondition to filing suit in district court. 42 U.S.C. § 2000e-5(f)(1); *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 149-50 (1984). "The rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *Hagner v. United States,* 285 U.S. 427, 430 (1932) (citing *Rosenthal v. Walker,* 111 U.S. 185, 193 (1884)). Thus the mailbox rule functions as a presumption of receipt, and only comes into play when there is a material question

as to whether the document was actually received. *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 419 (5th Cir. 2007). Both sides in this case agree that the EEOC sent a Notice to Sue letter to Maggio at his DC address on November 26, 2012. While there is no evidence that the EEOC sent the letter to Maggio through certified mail, there seems to be sufficient—as it is undisputed—evidence that the letter was, in fact, mailed. Here, the issue was that Maggio no longer lived at the permanent address that he provided to the EEOC. In this vein, Maggio argues for equitable tolling.

Equitable tolling is reserved for rare circumstances where it would be unconscionable to enforce the limitations period because of events beyond the plaintiff's control or through no fault of his own. *Lewis v. Conners Steel Co.*, 673 F.2d 1240, 1243 (11th Cir. 1982). This is not the case at hand. While the Court understands that family obligations arise, Maggio was aware that he had an action pending with the EEOC. Further, he had a statutory obligation requiring him to notify the EEOC of any change in address: "The person claiming to be aggrieved has the responsibility to provide the Commission with notice of any change in address and with notice of any prolonged absence from that current address so that he or she can be located when necessary during the Commission's consideration of the charge." 29 C.F.R. § 1601.7(b).

Here, Maggio failed to comply with the EEOC regulation and failed to exercise diligence in this matter. The Court takes notice of the fact that Maggio's counsel was listed on the form cross filed with the DCOHR and the EEOC, but at no time did Maggio direct these agencies to solely communicate—or even dually communicate—with his counsel. *Hill v. John Chezik Imports*, 869 F.2d 1122, 1124 (8th Cir. 1989); *Coleman v. Talbot County Detention Ctr.*, 242 Fed. Appx. 72, 73 (4th Cir. 2007); *Ryczek v. Guest Serv., Inc.*, 877 F. Supp. 754 (D.D.C. 1995). Simply listing counsel on a form did not excuse Maggio's statutory obligation and his failure to

exercise diligence in a matter that he brought before the agencies. As such, equitable tolling is not appropriate in this case, and Counts I and III are dismissed for lack of timeliness.

### 2. Retaliation – Failure to Exhaust Administrative Remedies

"A Title VII lawsuit following the EEOC charge is limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Park*, 71 F.3d at 907 (quoting *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)). "At a minimum, the Title VII claims must arise from 'the administrative investigation that can *reasonably* be expected to follow the charge of discrimination,'" even if only an EEOC-issued right-to-sue letter in fact follows the charge in place of an investigation. *Park*, 71 F.3d at 907 (quoting *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981) (emphasis added)). By insisting on the administrative charge requirement, courts ensure that a charged party has notice of the claim and that narrow issues come before the court for adjudication and decision. *Id.* Courts should not construe this requirement to place a "heavy technical burden on individuals untrained in negotiating procedural labyrinths;" however, liberal interpretation of an administrative charge cannot allow a litigant to bypass the Title VII administrative process. *Id.* (quoting *Loe v. Heckler*, 768 F.2d 409, 417 (D.C. Cir. 1985) (quotations omitted)).

Maggio does not dispute that Title VII complainants must exhaust administrative remedies before filing their claims in court; however, Maggio argues that his retaliation claim is like or related to his discrimination charge. Pl. Opp. to Def. Motion, Doc. [5], 13. Similar to the situation in *Park* where the plaintiff failed to mention the words or offer factual allegations that would express or even hint of the later claim, however, Maggio's Charge failed to mention the word "retaliation" or set forth facts to support such a claim in the administrative phase of his

6

Charge. *Park*, 71 F.3d at 907. In fact, Maggio did not even check the box for "retaliation" on the EEOC form when he filed the Charge, which would have provided PIW with notice of the allegation. Exhibit 4, SOMF ¶ 5, Def. Motion, Doc. [1-2]. "[T]he goals behind the requirement of prior resort to administrative relief would be frustrated if the filing of a general charge with the EEOC would open up the possibility of judicial challenges to any related conduct that took place in connection with the employment relationship." *Rush v. McDonald's Corp.*, 96 F.2d 1104, 1110 (7th Cir. 1992). Thus, Maggio's retaliation claim is dismissed with prejudice and barred due to his failure to exhaust his administrative remedies for such a claim at the EEOC.

### 3. Count II of Plaintiff's First Amended Complaint is Dismissed

Defendant alleges that Maggio's claim under the Equal Pay Act, Count II of Plaintiff's First Amended Complaint, should be dismissed as there is no cause of action under the EPA. Def. Reply to Pl. Opp., Doc. [6], 12. Maggio conceded no cause of action exists under the EPA, and as such, Count II of Plaintiff's First Amended Complaint is dismissed with prejudice. Pl. Opp. to Def. Motion, Doc. [5], 6.

For these reasons, the Court holds that Maggio failed to timely file his suit in court and all claims in Maggio's Amended Complaint are dismissed with prejudice. As such, Maggio's requested relief is denied, and defendant's motion to dismiss is granted.

A separate Order consistent with this Memorandum Opinion shall issue this date.